UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEDRICK JOHNSON,

Plaintiff,

v.                                                CAUSE NO. 3:23cv931 DRL

JOHNSTON and GALIPEAU,

Defendants.

OPINION AND ORDER

Dedrick Johnson, a prisoner without a lawyer, is proceeding in this case "against Cleaning Supervisor Ms. Johnston and Warden Galipeau in their individual capacities for compensatory and punitive damages for leaving him exposed to black mold and sewage in his cell at the Westville Correctional Facility in March 2023 in violation of the Eighth Amendment[.]" ECF 20 at 2. The defendants filed a motion for summary judgment. Mr. Johnson filed a response, and the defendants filed a reply. The summary judgment motion is now fully briefed.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278,

282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, the court conducts both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Id*. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (deliberate-indifference

claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official who takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable, though he ultimately failed to prevent the injury)

The defendants tender Mr. Johnson's deposition, his prison records, and affidavits from themselves and Unit Team Manager Philip Sonnenberg, which establish certain facts. On January 13, 2023, Mr. Johnson was moved into Cell A3-101 in the Westville Control Unit (WCU), a restricted housing unit. ECF 50 at 9; ECF 55-3 at 1; ECF 55-5 at 1. According to Mr. Johnson, when he first arrived in the cell there was "sewage all between the toilet area and table area" and "black mold everywhere." ECF 50 at 9. He was housed in the cell for approximately seven months. *Id.* at 10. Mr. Johnson testified he told both Supervisor Johnston and Warden Galipeau about the unsanitary conditions in his cell, but neither defendant took any steps to clean the cell. *Id.* at 23-24, 32.[1]

---

[1] Mr. Johnson testified he told Warden Galipeau about the condition of his cell on March 21, 2023. ECF 50 at 22. He could not recall exactly when he told Supervisor Johnston about the condition of his cell, but he testified the conversation occurred sometime between January and March 2023. *Id.* at 21.

During all relevant times, Supervisor Johnston supervised the Housekeeping Department for the WCU. ECF 55-2 at 1. She did not have regular contact with inmates in the WCU and was not typically involved in day-to-day cleaning efforts, as that was handled by correctional staff and the inmates themselves. *Id.* at 2. Rather, her job was to ensure that correctional staff had regular access to cleaning supplies, which the correctional staff would then supply to the inmates to clean their own cells. *Id.* The cleaning supplies that she routinely provided to the correctional officers included mops, buckets, toilet brushes, brooms, dustpans, and chemicals including dish soap, Germ-Away, and a citrus-plus cleaner. *Id.*

During all relevant times, correctional staff regularly performed rounds in the WCU. ECF 55-4 at 3. Case workers performed daily rounds, while maintenance staff performed rounds at least once per week. ECF 55-4 at 3. If cell cleanliness or maintenance concerns were identified or complained about during these rounds, the inmate and his cell would be placed on the list for a cell cleaning. *Id.* Cell A3-101 was inspected at least 17 times while Mr. Johnson was housed in the cell, and WCU's Unit Logs and Door Sheets do not reveal any cleanliness or maintenance concerns related to that cell. *Id.* at 4; ECF 55-6; ECF 55-7.

If Mr. Johnson needed to clean his cell, he had two available options. ECF 55-2 at 5. He could either (1) request and utilize the cleaning supplies that were made available to inmates twice per week, or (2) submitt a request slip for a cell cleaning, which would have prompted a deep cleaning by Supervisor Johnston and her porters. *Id.*

4

First, Mr. Johnson was offered two opportunities per week to clean his cell with cleaning supplies, and he could accept or decline each opportunity. ECF 55-2 at 3. During the relevant time period, WCU's Unit Logs and Restrictive Status Housing Records indicate cleaning efforts were regularly conducted and cleaning supplies were regularly provided in the WCU. *Id.* at 6. The records show that Mr. Johnson requested and was provided with cleaning supplies on numerous occasions, including on at least four occasions between January and April 2023. ECF 55-4 at 4; ECF 55-7 at 4, 6, 11, 14.

And second, Mr. Johnson could have submitted a request slip for his cell to receive a "deep cleaning." Specifically, whenever a cell required a "deep cleaning," Supervisor Johnston worked directly with a crew of porters to clean the cell. ECF 55-2 at 3. Supervisor Johnston provided a deep cleaning to a cell whenever (1) a cell was vacated and a new inmate was scheduled to be moved into the cell, or (2) a staff member submitted a request for a deep cleaning, which typically occurred when an inmate complained of a sanitary problem in his cell. *Id.* During these deep cleanings, the inmate would be removed from his cell, and Supervisor Johnston and the porters would remove all items from the cell and scrub down the surfaces, walls, floor, toilet, and sinks. *Id.* at 4. Supervisor Johnston inspected the cells during these deep cleanings, and never once in her 29 years of experience did she find anything resembling mold in any cell. *Id.* The WCU was well ventilated and the desks, toilets, and sinks were made of metal, which is not a surface hospitable to mold. *Id.*

There is no documentation of Mr. Johnson ever requesting a deep cleaning of his cell, or of him contacting Supervisor Johnston regarding any need for cell cleaning. ECF

55-2 at 6-7; ECF 55-3 at 6; ECF 55-4 at 4. On March 27, 2023, Mr. Johnson submitted a grievance complaining about the unsanitary condition of his cell, and in response the Grievance Specialist instructed him that "The procedure to request cell cleaning is as follows: Please submit a request slip to Ms. Johnston/Housekeeping." ECF 50 at 55-56. The defendants attest Mr. Johnson never submitted any such request slip to Supervisor Johnston, and Mr. Johnson does not dispute those attestations in his response.

The defendants argue summary judgment is warranted in their favor because Mr. Johnson cannot satisfy either the objective or subjective component of his conditions-of-confinement claim and, regardless, they are entitled to qualified immunity. In his response, Mr. Johnson argues the defendants were deliberately indifferent for doing nothing in response to his complaints of black mold in his cell. ECF 60. Specifically, Mr. Johnson attests he told both Supervisor Johnston and Warden Galipeau about the black mold when they were walking past his cell, and both defendants walked away from his cell without doing anything to help. ECF 60-2 at 10-2.

Here, no reasonable jury could conclude the defendants exhibited "a total unconcern" for Mr. Johnson's welfare "in the face of serious risks," as the undisputed facts show they took measures that were "reasonably calculated" to address the risk of black mold in the WCU. *See Stockton*, 44 F.4th at 615; *Hunter*, 73 F.4th at 566; *Hickingbottom v. Holcomb*, No. 25-1344, 2026 WL 311964, 3 (7th Cir. Feb. 5, 2026) (summary judgment warranted in favor of the defendants because they took reasonable steps to respond to the plaintiff's complaints of black mold in his cell, including regularly inspecting his cell and providing him with cleaning supplies). Specifically, it is undisputed the defendants

implemented a system in the WCU where cells were regularly inspected, inmates were regularly provided with cleaning supplies to clean their own cells, and an inmate could submit a request slip to request a deep cleaning of his cell by Supervisor Johnston and the inmate porters. It is undisputed Mr. Johnson requested and received cleaning supplies on numerous occasions, and he does not allege he ever was denied access to cleaning supplies. It is also undisputed Mr. Johnson submitted a grievance about the condition of his cell and was instructed to submit a request slip to Supervisor Johnston to request a deep cleaning, and Mr. Johnson does not allege or provide any evidence he ever did so. Accepting as true Mr. Johnson's assertion that he spoke to Supervisor Johnston and Warden Galipeau in person about the alleged black mold in his cell and both defendants walked away without making any effort to clean his cell, this does not show that either defendant acted with "a total unconcern" for Mr. Johnson's welfare "in the face of serious risks," as both defendants knew that measures were in place for Mr. Johnson to request cleaning supplies and to request a deep cleaning of his cell. Because the defendants had procedures in place that were "reasonably calculated" to address the risk of black mold in the WCU, the fact that Mr. Johnson chose to speak to the defendants in person rather than make use of those procedures does not show an Eighth Amendment violation.

Accordingly, no reasonable jury could conclude the defendants were deliberately indifferent to a serious risk of harm to Mr. Johnson. Summary judgment is therefore warranted in favor of the defendants.

For these reasons, the court:

7

(1) GRANTS the defendants' summary judgment motion (ECF 55); AND

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Dedrick Johnson and to close this case.

SO ORDERED.

May 20, 2026                                    *s/ Damon R. Leichty*
                                                Judge, United States District Court

8